**UNITED STATES**

v.

**Alvin CAMPBELL et al.**

**Crim. No. 57–280.**

United States District Court
D. Massachusetts.
May 1, 1961.

See also 199 F.Supp. 905.

---◆---

William J. Koen, Boston, Mass., for defendant.

Lawrence F. O'Donnell, George Ward, Boston, Mass., Melvin S. Louison, Taunton, Mass., for defendant.

McCARTHY, District Judge (retired, sitting by designation).

This case affecting three defendants came on for a hearing before me as the result of a mandate from the Supreme Court of the United States in Campbell, et al. v. United States, 365 U.S. 85, 81 S. Ct. 421, 5 L.Ed.2d 428, in the form of a remand without in any way ordering a new trial except under conditions set forth in the mandate itself and with the direction from the Supreme Court to hold a new inquiry consistent with the opinion rendered. I have done so, and I have tried to carry out this mandate. I gave counsel for the defendants and counsel for the United States government full opportunity to carry on with a full inquiry. A transcript of the testimony taken by a court stenographer covers 283 pages.

*Findings of Fact*

1. On July 19, 1957, Special Agent John F. Toomey of the Federal Bureau of Investigation interviewed Dominic Staula in regard to a bank robbery which had taken place in the Canton branch of the Norfolk County Trust Company, this interview taking place at the Canton Police Station on the day following the robbery.

2. The interview lasted about thirty minutes. No one was present in the room but Agent Toomey and Mr. Staula. In the course of the interview Mr. Staula told Agent Toomey, in narrative form, the story of the experience on the preceding day. Mr. Toomey, who does not have the ability to take shorthand notes, noted in longhand, key words and abbreviations and one quote sufficient to recall to his mind the story told by Mr. Staula.

3. After hearing the story and asking specific questions intended to clarify the narrative, Agent Toomey repeated to Mr. Staula, from memory and using the notes which he had taken only to refresh his recollection, the substance of the story which Mr. Staula had related to him. There was nothing in the reading of the notes back to Mr. Staula that indicated there was the slightest disagreement to the story as Agent Toomey related it.

4. Agent Toomey did not transcribe the story related to him by Mr. Staula word for word. Neither did he show the notes to Mr. Staula for approval, nor have him sign or initial the notes, nor did he obtain any written statement from Mr. Staula at any time. Agent Toomey saw Mr. Staula only on the one occasion of the interview of July 19, 1957.

5. It was not until 9 P.M. on the same day that Agent Toomey returned to the branch office of the Federal Bureau of Investigation in Brockton, Massachusetts, which was his office, where he read into a dictaphone what was referred to as an Interview Report concerning his talk with Mr. Staula in accordance with the practice of the office. The recorded statement of Agent Toomey was then forwarded to the Boston Office of the Federal Bureau of Investigation for transcription and the completed report was returned to Agent Toomey in the Brockton Office in about five days. It would clearly appear there was no secretary assigned to this office and this was the medium by which the transcriptions were made, he being the only man assigned to the office in Brockton. The completed product was returned to Agent Toomey in about five days, and it truly reproduced what he had dictated.

6. I find that the Interview Report made by Agent Toomey is not a written statement made by Mr. Staula nor was it signed or otherwise adopted or approved by Mr. Staula.

7. I find that the Interview Report is not a stenographic, mechanical, electrical, or other recording, or a transcription of such a recording, which is a substantially verbatim recital of an oral statement made by Mr. Staula to Agent Toomey. I further find that no substantially verbatim recital of an oral statement of Mr. Staula was recorded contemporaneously with the making of an oral statement by Mr. Staula.

8. I find that the original notes taken by Agent Toomey were not a written statement made by Mr. Staula nor was it signed or otherwise adopted or approved by Mr. Staula.

9. I find that the original notes made by Agent Toomey were not a stenographic, mechanical, electrical, or other recording, or a transcription of such a recording, which was substantially verbatim recital of an oral statement made by Mr. Staula to Agent Toomey. I further find that the original notes made by Agent Toomey were not a substantially verbatim recital of an oral statement of Mr. Staula recorded contemporaneously with the making of the statement.

### Conclusions of Law

[1]. 1. The Interview Report was not a producible document within the meaning of subsection (e) (1) of § 3500 of Title 18 of the United States Code.

2. The Interview Report was not a producible document within the meaning of subsection (e) (2) of § 3500 of Title 18 of the United States Code.

3. The destruction of the original notes was not a noncompliance within the meaning of subsection (d) of § 3500 of Title 18 of the United States Code.

4. The original notes of Agent Toomey would not have been producible under either subsection (e) (1) or (e) (2) of Title 18 of the United States Code, if they had existed at the time of trial or if they existed now.

5. It follows that the motion for the production of pre-trial statements of Mr. Staula, made at trial and open for redetermination at this time in accordance with the decision of the Supreme Court of the United States in this case, must be denied.

### OPINION

In this unusual hearing I have attempted to follow the ground rules laid down for me in the opinion of the Supreme Court of the United States. I have denied the motion made by counsel for the defendants for the production of Mr. Staula for examination in these proceedings in accordance with that opinion and because his testimony at trial stands as footnoted in the opinion of the Supreme Court of the United States, 365 U.S. 85, at p. 89, 81 S.Ct. 421, 5 L.Ed. 2d 428. I have not conducted this inquiry as an adversary proceeding; I have allowed both parties to examine and cross examine witnesses. I have not limited the scope of inquiry except as it became repetitive and, in determining the facts, I have not considered that either party had a burden of proof or of

**216**

persuasion. Faced with the quandary of determining what standard of review of credibility to use, I have taken the testimony of Mr. Staula, as given at trial, and have weighed the conflicts between the two as though this were ordinary testimony presented in a non-adversary civil matter, such as testimony received by the court to determine what allocation should be made of a fund recovered in an F.E.L.A. action wherein the decedent has left a widow and minor children. I have resolved the conflicts in the testimony as indicated by my findings of fact.

After hearing arguments of counsel I am not persuaded that the original notes or the Interview Report come within either subsection (e) (1) or (e) (2) of section 3500 of Title 18 for the following reasons.

There is no evidence which persuades me that Mr. Staula ever saw, read, signed, adopted or otherwise approved the original notes or the Interview Report.

 Neither is there any evidence of a substantially verbatim transcription of a statement by Mr. Staula. I am puzzled by the statutory words "substantially verbatim" as they are used since I am of opinion that that which is substantial is not verbatim and vice versa. However "It is clear that Congress was concerned that only those statements which could properly be called the witness' own words should be made available to the defense for purposes of impeachment. It was important that the statement could fairly be deemed to reflect fully and without distortion what had been said to the government agent. Distortion can be a product of selectivity as well as the conscious or inadvertent infusion of the recorder's opinions or impressions. It is clear from the continuous congressional emphasis on 'substantially verbatim recital,' and 'continuous, narrative statements made by the witness recorded verbatim, or nearly so * * *,' '* * * that the legislation was designed to eliminate the danger of distortion and misrepresentation inherent in a report which merely selects portions, albeit accurately, from a lengthy oral recital. Quotation out of context is one of the most frequent and powerful modes of misquotation. We think it consistent with this legislative history, and with the generally restrictive terms of the statutory provision, to require that summaries of an oral statement which evidence substantial selection of material, or which were prepared after the interview without the aid of complete notes, and hence rest on the memory of the agent, are not to be produced. Neither, of course, are statements which contain the agent's interpretations or impressions." Palermo v. United States, 360 U.S. 343, 352–353, 79 S.Ct. 1217, 3 L.Ed.2d 1287.