

William J. Koen, Asst. U. S. Atty., Boston, Mass., for plaintiff.

Lawrence F. O'Donnell, Boston, Mass., Melvin S. Louison, Taunton, Mass., for defendants.

WYZANSKI, District Judge.

This case is in this Court pursuant to an order of the Court of Appeals, following its opinion rendered November 7, 1961 in Alvin R. Campbell et al. v. United States, No. 5847, 296 F.2d 527. By lot, Judge Caffrey drew the case. He disqualified himself and, at his request, last week I accepted assignment of the case. November 28, 1961, I asked counsel to appear before me the next day. They did, and, with their consent, I scheduled the case for hearing on December 5, 1961, and for that day summoned Staula and Toomey "both to testify", as ordered at p. 534 of the opinion of the Court of Appeals. At their counsel's suggestion, I also issued process requiring the three defendants to be in Boston December 4, 1961 so that counsel might interview them that day, and have them present in the courtroom for identification purposes on December 5, 1961.

**UNITED STATES of America,**
**Plaintiff,**

v.

**Alvin R. CAMPBELL et al., Defendants.**

**Crim. No. 57–280.**

United States District Court
D. Massachusetts.

Dec. 5, 1961.

The story of this case requires only brief recapitulation. December 17, 1957 the grand jury indicted these three defendants for armed robbery of a bank under 18 U.S.C. § 2113. Judge McCarthy tried the case to a jury. Staula testified. To impeach him defendants' counsel sought access to a so-called interview report, the document before me as Ex. 3. Judge McCarthy refused counsel access to that paper. The jury convicted. February 18, 1958 Judge McCarthy imposed sentences of 25 years imprisonment on each defendant. They appealed. The Court of Appeals affirmed. 1 Cir., 269 F. 2d 688 (1959). On certiorari, the Supreme Court, in effect, suspended the convictions and returned the case to the District Court for the purpose of making a further inquiry into the circumstances attending the report. Campbell v. United States, 365 U.S. 85, 81 S.Ct. 421, 5 L.Ed. 2d 428 (1961). Judge McCarthy held a hearing, and on May 1, 1961 he filed findings of fact and conclusions of law, and he re-imposed the sentence of 25 years originally imposed on February 18, 1958, but adjudged that defendants be credited with all good time already served by them under the original sentences. On appeal, the Court of Appeals re-examined the evidence, adopted canons for the interpretation of the relevant Jencks statute, 18 U.S.C. § 3500, and, while retaining jurisdiction of the appeal generally, returned the original papers to this Court for further proceedings before another judge.

The hearing before me involved the testimony of only Staula and Toomey. Both were examined by defendants' counsel and by the assistant District Attorney. Each gave a straightforward and, in general, credible account. Such discrepancies as there were in no way reflected on the integrity or general testimonial reliability of either man. But there were some minor inaccuracies of observation and lapses of memory such as might be expected of honest men. My findings on the basis of their testimony follow.

1. On July 19, 1957 Toomey, an F.B.I. special agent, alone interviewed at the Canton police station Staula who, as a customer present in the bank, was an eyewitness of the robbery.

2. Toomey had in front of him an ordinary pad of white paper with blue lines. As he asked Staula questions, the pad was not within range of Staula's detailed observation. But from Toomey's own testimony, it is quite clear what he put on the pad. He did not purport, as though he were a court stenographer, to write down every word. But in longhand, and not in cipher, or with unusual abbreviations, he set down two different types of information. One was direct quotation of the precise words Staula used in describing each of the alleged robbers whom Staula observed, and of the phrase "over against the wall" used by Staula. The other information was a substantially accurate, but not letter-perfect, rendering of answers Staula gave to Toomey's questions.

3. When Toomey had finished writing, he addressed Staula. Toomey did not purport to read the jottings on the pad in just the order they appeared, nor with the scrupulous care that one stenographer would read back to another. Yet Toomey not merely adhered to the substance but so far as practical to the precise words,— and to achieve this correspondence he looked down at the jottings each time before he uttered a sentence.

4. At the end of the reading, Staula told Toomey that what the latter had written was to the best of Staula's knowledge what had happened, and that to the best of his knowledge it was true. Toomey did not ask Staula to sign his approval; nor was there any reason so to do for Staula was not a possible party, nor a likely adverse witness who could be impeached, nor a person whose testimony could be used in his absence.

5. There is, in my opinion, no difference of any substance, and hardly any difference in form or order of presentation between what Toomey repeated to Staula and what Toomey had jotted on the pad, or between what Toomey had jotted on the pad and that portion of what Staula told Toomey which had any value

as possible testimony at any stage of this case.

6. After Staula left, Toomey used the jottings on his pad to dictate to a disc. Any person who had the jottings before him and had Toomey's knowledge of what Staula said would have dictated the same words to the disc. That is, there is not on the disc any element of art, invention, or originality on the part of the dictator. The disc is a faithful record of the words used by Staula, some recorded in the jottings, some carried in Toomey's memory. It is as accurate a statement of Staula's account as is permitted by the lot of man (without a stenographer or recording machine). And if the first disc had been destroyed, a second disc containing the same words (without addition or subtraction) could have been recorded either by Toomey or anyone who heard Staula.

On the basis of the foregoing findings based on the *viva voce* testimony of Staula and Toomey, it may be that the Court of Appeals will want to reconsider some of the statements in its opinion. It is doubtful whether it is correct to say that Toomey's "notes were not a running account." Toomey's jottings seem to me to have resembled the best kind of judicial notes,—the sort which until two decades ago (when the court reporter act, 28 U.S. C. § 753, was passed,) were the staple source of records in criminal appeals from the District Courts of the United States. Indeed they were better than judicial notes because not only their substance but their contents, merely re-arranged for order, were read back by Toomey to Staula. As he read back, Toomey looked at the jottings before he spoke each sentence. The correspondence of the talk and the text was not far below that achieved by most readers of texts.

Moreover, that oral presentation, while in narrative form, was an accurate summary of answers Staula had given to Toomey's questions. It had a far higher degree of accuracy than many narrative records that used to be regularly prepared in equity cases under the old practice, and than many narrative records current-ly prepared in response to rules of Courts of Appeal in many circuits.

In any event, Staula adopted as his own Toomey's oral presentation.

Furthermore, when Toomey dictated to the disc he dictated what I infer was almost *in ipsissima verba* the narrative he had just checked with Staula. This inference is supported in many ways. Toomey testified that anyone who heard Staula and had Toomey's jottings would have dictated the same words. Toomey also testified that, if the first disc had been destroyed, he would have dictated the same words to a second disc half an hour later. Finally, the text of the discs, Ex. 3, shows not only a precise quotation within quotation marks, but also many statements which are, examined fairly, indirect discourse.

In short, it is not certain that the expanded record which now exists in this case will lead the Court of Appeals to adhere to the view it expressed on November 7 that "what Toomey * * * told Staula that morning differed to some extent from what was in his notes, and * * * differed also from what he put in the eventual report." (P. 530.)

It may be that the Court of Appeals, in the light of the expanded record, would accept a conclusion that Ex. 3 satisfies sub-section 2 of Section (e) of the Jencks Act, 18 U.S.C. § 3500. If that Court would accept such a conclusion, I would reach that conclusion. For, in my opinion, Ex. 3 is a "substantially verbatim recital", as that phrase is used at page 530 of the Court of Appeals' opinion, even though Ex. 3 is not, as page 532 insists, the result of "stenographic, mechanical, electrical, or other recording." I would hope that, in the light of fresh testimony, the Court of Appeals would re-open the decision embodied in the first sentence of the first full paragraph on page 534.

I also conclude that Ex. 3 satisfies sub-section 1, as that sub-section is interpreted at page 532 and 533 of the opinion of the Court of Appeals. Despite what the Court of Appeals found on the earlier,

incomplete record, I am persuaded that Toomey, by glancing down at the jottings and other indications, did in fact "read those words to him" and was not "elaborating it [the text] in recounting back to the witness." (P. 532.) At most, Toomey re-arranged the order of statements, all of which were in longhand on the pad.

It is not necessary for me to go further and consider the appropriate relief which should follow if my findings and conclusions are acceptable to the Court of Appeals. That Court is still seised of the appeal. Its judges are as mindful as I that at the root of this case is not a mere schoolmaster's problem of construing the ambiguous language of a legislature, but the protection of the fundamental right of any defendant in a criminal case to impeach a witness by a substantially verbatim statement he previously made and which he has adopted and approved. Seldom indeed is there such a clear showing as there has been here that Ex. 3 is a witness's substantially verbatim statement made on the day following a crime.