Alvin R. CAMPBELL et al., Defendants,
Appellants,

v.

UNITED STATES of America,
Appellee.

No. 5847.

United States Court of Appeals
First Circuit.

Heard April 4, 1962.

Decided May 22, 1962.

Rehearing Denied June 26, 1962.

Melvin S. Louison, Taunton, Mass., and Lawrence F. O'Donnell, Boston, Mass., for appellants.

William J. Koen, Asst. U. S. Atty., with whom W. Arthur Garrity, Jr., U.S. Atty., was on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

WOODBURY, Chief Judge.

This opinion supplements the opinion of this court of November 7, 1961, 296 F.2d 527, wherein, while retaining jurisdiction generally, we directed return of the original papers to the district court for further proceedings before another judge. Further proceedings were had as directed and the court's findings and conclusions are before us on briefs and arguments.

Before turning to those findings and conclusions a brief résumé will be helpful.

This court originally affirmed the appellants' sentences for bank robbery, giving only brief consideration to the question of their right under the Jencks Act, 18 U.S.C. § 3500, to have access to a so-called "Interview Report" of the FBI agent who investigated the robbery the day after it happened. Campbell v. United States, 269 F.2d 688, 690 (C.A.1, 1959). On certiorari, Campbell v. United States, 365 U.S. 85 at pages 93, 94, 81 S.Ct. 421, 5 L.Ed.2d 428 (1961), the Supreme Court described the Interview Report and its origins and basis in de-

tail and remanded to the District Court for further findings, saying that the aid of extrinsic evidence was required to answer four specific questions. These questions in substance were: (1) Whether the FBI agent, Toomey, wrote down what the witness, Staula, told him at the interview, and if so, whether Toomey gave Staula the paper to read to make sure that it was right and did Staula sign it? (2) Was the Interview Report the paper described by Staula or a copy of it?[1] (3) If the Interview Report was neither the original nor a copy of the paper Staula described, what became of the paper? and (4) "In any event, even if the Interview Report was not the original or a copy of the paper Staula described, had Staula read over and approved the Interview Report? * * *[2] Or was the Interview Report a substantially verbatim recital of an oral statement which the agent had recorded contemporaneously?"[3]

The District Court on that remand held a further hearing after which it made findings of fact and drew conclusions of law and the case again came before this court on appeal. Campbell v. United States, 296 F.2d 527 (C.A.1, 1961). We found the hearing unsatisfactory in a number of respects. Nevertheless, we found it adequate to provide the answers to some of the questions propounded by the Supreme Court.

As we understood the opinion of that Court in this case subsection (1) of section (e) of the Jencks Act defining the statutory meaning of a "statement" as

" * * * a written statement made by said witness and signed or otherwise adopted or approved by him" covered not only statements written by the witness himself but also statements orally made by a witness but written down by someone else provided the witness "signed or otherwise adopted or approved" the writing although it did not follow the words of the witness "substantially verbatim." And we held that subsection (2) of section (e) quoted in the margin[4] was limited to oral statements of a witness taken down contemporaneously by a stenographer or recorded mechanically or electrically or in some equivalent way, which would assure production by transcription, perhaps later, of a "substantially verbatim recital" of what the witness said.

Applying the facts as then found, indeed the undisputed facts, to our understanding of the statute we held that the Interview Report was not a statement within (e) (2), because it was not in Staula's words but in Toomey's. Moreover, the Interview Report cannot qualify as a statement under this subsection because Toomey's recording onto the disk, which was later transcribed and became the Interview Report, was not contemporaneous with Staula's oral statement to Toomey. Toomey interviewed Staula around noon but did not dictate from his notes onto the disk until evening. This answered in the negative the last part of the fourth question propounded by the Supreme Court and the only one with respect to subsection (e)

---

1. With respect to this question the Court commented that in either event the Report would be a producible statement under § (e) (1) of the Act, for that section is not limited in its application to statements actually written by a witness but includes statements written by another if signed by the witness or "otherwise adopted or approved" by him in which event a signature was not necessary.

2. The Court said that if Staula had read over and approved the Interview Report it would be admissible under § (e) (1) even though "not related" to the paper Staula described.

3. Commenting on the second part of this question the Court said: "If extrinsic evidence established this, the report would be producible under subsection (e) (2)."

4. "(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness to an agent of the Government and recorded contemporaneously with the making of such oral statement."

(2). Wherefore we concluded that the Interview Report was not producible under subsection (e) (2) but could only be producible if it were a "statement" within the definition of subsection (e) (1).[5]

We thought the findings of the court below on the question of the producibility of the report under this subsection were not completely satisfactory. Nevertheless we found the record made at that hearing adequate to answer some of the other questions propounded by the Supreme Court. We found on Toomey's testimony, Staula had not testified, that at the interview Toomey took longhand notes of what Staula said, occasionally using symbols and abbreviations; that after the interview Staula was not shown the notes and did not sign or initial them, but that Toomey had recited the "substance" of the notes back to Staula and that Staula had said that Toomey "had the story straight." Then we found that Toomey attended to other matters for the rest of the day and that evening dictated his so-called Interview Report onto a disk in a machine. In doing so we found that Toomey had not dictated his notes but had first rearranged them in chronological order and then, relying primarily on his notes but also on his memory, and using his own language, had dictated a report that "reflects the information in the notes." We found that Toomey sent the disk to the Boston office of the FBI to be transcribed and upon receipt of the transcription a few days later checked it against his notes and finding it accurate destroyed his notes in accordance with standard FBI practice. Toomey did not show his report to Staula and did not interview him again.

These findings disposed of most of the Supreme Court's questions. However, Staula had not been called to testify at that hearing and at the trial he had testified that, although he could not clearly

remember, he thought that " * * * they wrote down what I said, and then I think they gave it back to me to read over, to make sure that it was right. And I think I had to sign it. Now, I am not sure." Campbell v. United States, 365 U.S. 85, 89, 81 S.Ct. 421, 5 L.Ed.2d 428 (1961), footnote 2. There being a discrepancy between this testimony and Toomey's, and Staula not having testified at the hearing on the Supreme Court's remand, we, while retaining jurisdiction generally, remanded to the District Court " * * * for further hearings and findings, with Toomey and Staula both to testify, as to whether Staula signed or otherwise adopted or approved the notes, in order that the mandate of the Supreme Court be fully complied with."

After a hearing on this remand the court below found, 199 F.Supp. 905, that Staula had not signed his approval of Toomey's notes. Nor did it find that Toomey had purported to read his notes back to Staula in just the order or in the exact words written down by Toomey on his pad. It did find, however, that: "At the end of the reading, Staula told Toomey that what the latter had written [actually on the undisputed testimony Staula never saw what Toomey had written] was to the best of Staula's knowledge what had happened, and that to the best of his knowledge it was true." And the court below found that in its opinion there was " * * * no difference of any substance, and hardly any difference in form or order of presentation between what Toomey repeated to Staula and what Toomey had jotted on the pad, or between what Toomey had jotted on the pad and that portion of what Staula told Toomey which had any value as possible testimony at any stage of this case." On the basis of these and similar findings of close correspondence between Toomey's notes, what Toomey had recit-

---

5. The court below, no doubt from an excess of caution, allowed counsel for the defendants over government counsel's objection to elicit evidence bearing upon producibility under subsection (e) (2) and made findings on that evidence. Adhering to the views previously expressed we shall not comment on that evidence or the findings based thereon.

ed to Staula from those notes and what Toomey had dictated on the disk from which his Interview Report was transcribed, the court below concluded that in its opinion the latter was a "substantially verbatim recital" of what Staula had said to Toomey.

■■■ These latter findings go to the verge, if not perhaps beyond the scope, of our mandate. However, even if we were to accept them our opinion would not be changed.

Slight changes in phraseology can often work vast changes in meaning. And in Palermo v. United States, 360 U.S. 343, 350, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959), the Court, referring to legislative history, said that Congress felt it would " * * * be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations and interpolations." Moreover, to determine what language appearing in the Interview Report had actually been used by Toomey and approved by Staula when Toomey recited from his notes to Staula after the interview, imposes a subtle and exceedingly difficult if not impossible problem for the district court. Furthermore, to delete from the Interview Report the words not approved by Staula would result in his being confronted on cross-examination with his words out of context. Therefore we think we must assume that when the Court in its opinion in the present case at pages 93 and 94 of 365 U.S., at page 421 of 81 S.Ct. used the word "copy" in the questions it propounded with respect to subsection (e) (1) it meant just what it said and not something less than a copy, barring perhaps minor misspellings, typographical errors and the like.[6]

Construing "copy" as used by the Court as meaning not almost a copy or anything less than a copy, we now categorically answer the Supreme Court's questions as follows: (1) Toomey did not write down what Staula told him at the interview but at the most only the essence or substance, in part in his own words, of what Staula told him and Toomey did not give the paper to Staula to read or read it to him word for word to make sure that it was right nor did Staula sign it; (2) the Interview Report was neither the paper described by Staula nor a copy of it; (3) that paper was destroyed by Toomey in accordance with FBI practice [7] and (4) Staula did not read over and approve, indeed he never even saw, the Interview Report. The second part of question (4) we have already answered.

Judgments will be entered affirming the judgments of the District Court.

ALDRICH, Circuit Judge (concurring).

While the court is perhaps right that subsection (2) does not require further comment, in case someone might think otherwise I might point out that the court found, on unimpeached testimony, that the disc from which the report was transcribed constituted Staula's words, "some recorded in the jottings [notes], some carried in Toomey's memory." It must follow that the notes contained less than what Staula told Toomey and less than what Toomey later dictated. Thus it must be clear that the notes were not the "substantially verbatim recital" described in section (e) (2). I do not gather the district court purported to find they were. It so described the combination of notes and memory which was the report. But section (e) (2) requires a "stenographic, mechanical, electrical, or other recording," "recorded contemporaneously with the making of such oral statement," not one prepared in the present manner a number of hours later.

---

6. The foregoing discussion applies to subsection (e) (1) not to subsection (e) (2) containing the "substantially verbatim" phrase.

7. We considered the consequences flowing from this in the opinion which this one supplements.

With respect to section (e) (1) if this court is in error and the decision should turn on the correctness or incorrectness of the district court's findings I do not think that all of them should stand. The principal basis for the court's finding, concededly an inference, that what "Toomey dictated to the disc \* \* \* was almost *in ipsissima verba* the narrative he had just checked with Staula," was stated by the court to be Toomey's testimony that "anyone who heard Staula and had Toomey's jottings would have dictated the same words," and that "if the first disc had been destroyed, he would have dictated the same words to a second disc half an hour later." This was less than a precise representation of the testimony. While I do not wish to quibble, the witness twice added to "hearing Staula," the broader qualification "[who had] the same knowledge of the case." Rather than the phrase "the same words" twice used by the court, on the first occasion the witness stated, "substantially the same thing," and on the other that the second disc would be "substantially the same."

The court's emphasis on *ipsissima verba* is heightened when one realizes that "just checked with Staula" means checked some seven hours before. I cannot bring myself to believe that the checking back with a witness at noontime of a consolidation of jottings and memory, and the dictation of a report in the evening, would result in the identity inferred by the court. If it happened it would be a surprising coincidence. I agree with my brethren that the statute is not satisfied in such a manner.

### On Petition for Rehearing.

### WOODBURY, Chief Judge.

In our opinion of November 7, 1961, 296 F.2d 527, we said that the Jencks Act imposed *no duty* on the agents of the FBI to take the statements of witnesses and no duty, at least in the absence of bad faith, to keep any statements that might have been taken. Therefore, there being no evidence from which it could possibly be found that Toomey destroyed his notes in bad faith, the question propounded by this petition for rehearing whether his notes, had they not been destroyed, would be producible under subsection (e) (1) of the Act is academic. The petition for rehearing is denied.

ALDRICH, Circuit Judge, (concurring).

Appellants make no contention that the original notes were destroyed in bad faith. Nonetheless, the Supreme Court indicated the possibility of consequences unfavorable to the government even if the destruction were innocent. Consequently, in our opinion of November 7, although we indicated our own views that it was legally immaterial, we instructed the district court to determine "whether Staula \* \* \* adopted or approved the notes, in order that the mandate of the Supreme Court be fully complied with." The court now states that appellants are not entitled to an answer to this question because of its immateriality. I confess that because of my belief that the answer should not make any difference I overlooked the fact, when concurring in the court's decision of May 22, 1962, that it had not been given.

On the present posture the case stands thus. The district court, on the last remand, found that the interview report itself satisfied the requirements of subsection (e) (1). It did not expressly find, and it does not necessarily follow, that the court thought the notes themselves satisfied this section. Possibly the court would have so found had it adverted to the question more specifically, but on the record it seems likely that had it done so considerations which impermissibly entered into its determination with respect to the report would also have entered here, and that equally we might have been obliged to set the finding aside. However, in the absence of a finding we need not pursue this question.

Strictly, as I see it, the matter immediately before us is whether to send

the case back to the district court now for a specific finding with respect to the notes. Since no finding by the district court would change our ultimate decision and appellants would have to go to the Supreme Court in any event, and since that court may well conclude that the character of the notes is of no consequence where their destruction was in entire good faith, I will not dissent from the denial of the petition for rehearing.