**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Alfred Joseph KEIG, Sr., Defendant-**
**Appellant.**

**No. 13881.**

United States Court of Appeals
Seventh Circuit.

July 24, 1963.

Anna R. Lavin, Joseph Keig, Sr., Chicago, Ill., for appellant.

James P. O'Brien, U. S. Atty., John Powers Crowley, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Asst. U. S. Atty., of counsel, for appellee.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and CASTLE, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Alfred Joseph Keig, Sr., defendant, has appealed from his conviction and sentence, entered upon a judgment following a jury trial in the district court. The action was based upon a five count indictment, under the provisions of 26 U.S. C.A. § 7203, charging knowing and willful failure to make income tax returns to the District Director of Internal Revenue for the years 1954 through 1958.

Among several errors relied on by defendant is an alleged denial of his rights under the Jencks act, 18 U.S.C.A. § 3500, which we shall now discuss.

Carmen Marici, a special agent of the Intelligence Division of the Internal Revenue Service, testified that he made an investigation and caused searches to be made, and that he had testified before the March 1961 grand jury as to the facts revealed in his investigation.

He further testified that on March 23, 1960, he, in company with agent Jerome Foster, talked with defendant and asked whether he had any records of income and expense.

Marici also testified that, when he asked defendant whether he knew about taxes, defendant volunteered the reason that he "didn't file any income taxes", saying "Well, I will tell you. It is a God damn fraud, and what I did, I did deliberately."

On cross-examination Marici said that he made reports relative to some subsequent meetings with defendant.

Thereupon the following occurred:

"Miss Lavin [defense counsel]: If the Court please, may I have those reports?

"The Court: Is there any objection?

"Mr. Becco [government counsel]: The main objection is that it is far beyond the scope of the direct examination. Nothing has been gone into as to that.

"The Court: If there is no objection, I suggest you show the reports.

"Mr. Becco: I will be glad to. I am now tendering to counsel for the defendant a three-page typewritten statement of interview occurring on March 30, 1960."

Thereupon the following interrogation by defense counsel took place:

"Q. Mr. Marici, is this the only other report that you have made relative to the subject matter of this case?

"A. I don't understand what you mean, the only report, ma'am? Will you please explain yourself?

"Q. You know what a report is.

"A. Yes. That is the point.

"Q. Did you make any further reports other than the two which Mr. Becco has just delivered to me relative to the subject matter of this case?

"A. Are you talking about these two meetings, ma'am?

"Q. I am talking about the subject matter of the case on trial, the subject matter of this litigation, sir.

"A. I wrote a report on the investigation, if that is what you are referring to.

"Mr. Becco: This we stipulate to. We agree there is a report on it, a general report on the case. There is in all of them.

"Miss Lavin: May I have that?

"The Court: I don't think you are entitled to that.

"Miss Lavin: The statute says relating to the subject matter.

*　*　*　*　*　*

"Miss Lavin: I think, your Honor, there might be conceivably things I am not entitled to. Maybe your Honor should look at that.

"The Court: I suppose there would be, as a matter of fact, but I don't think you are entitled to the report. It is not my understanding that the revenue agent's report to his superiors with a recommendation

—

"Miss Lavin: I don't know that that is what it is.

"The Court: I take it—Is that what it is?

"Mr. Becco: That is exactly what it is.

"The Court: What other report did you prepare, Mr. Marici?

"The Witness: I prepared what we call a final report based, upon the

facts and the evidence as disclosed by the investigation.

"The Court: Yes. It is my understanding that you are entitled to any statement in the nature of reports on interviews, conferences, and what have you, but that an Internal Revenue agent's report for the purpose of recommending action by the agency is not subject to production under 3500.

"Miss Lavin: Then your Honor has denied my request.

"The Court: With respect to additional reports."

In Campbell v. United States, 373 U.S. 487, 83 S.Ct. 1356, the court for a second time considered the impact on Campbell of the Jencks act, 18 U.S.C.A. § 3500. The first occasion was its 1961 opinion reported in 365 U.S. 85, 81 S.Ct. 421, 5 L.Ed.2d 428. Following a remand ordered in the 1961 case, the trial judge held a hearing. As a result thereof he then held that neither certain notes nor a certain interview report were producible under the Jencks act. D.C., 206 F.Supp. 213. On appeal, the Court of Appeals expressed dissatisfaction with the judge's conduct of the hearing, but accepted his ruling that the interview report was *not* producible. 1 Cir., 296 F.2d 527. The Court of Appeals, however, while retaining jurisdiction of the appeal generally, ordered a further hearing before a district judge for a determination of specified questions of fact. This hearing appears to have then been had before another district judge. D.C., 199 F.Supp. 905. The Court of Appeals accepted the second district judge's findings, but held that the report did not come within § 3500(e)(1). 1 Cir., 303 F.2d 747.

The United States Supreme Court, in the 1963 Campbell case, reversed the Court of Appeals, vacated the judgment of conviction and remanded for further proceedings. The court agreed with the second district judge that the interview report was producible under § 3500(e)(1). The court reasoned that the producibility of the report would depend upon (1) whether a government agent Toomey's oral version of his interview notes might fairly be deemed a reading back of the notes to a government witness (Staula) and (2) whether the interview report may fairly be deemed a copy of the notes. The court held that these were questions of fact, "the determination of which by the district judge may not be disturbed unless clearly erroneous." It added that, for the purpose of applying the clearly erroneous standard to the case, it deemed controlling the findings of the second district judge. The court said that it could not find that such finding was clearly erroneous. The court came to the conclusion, 373 U.S. at 496, 83 S.Ct. at 1362:

"* * * Surely fairness in federal criminal procedure, which the Jencks Act was enacted to secure, Campbell I, 365 U.S., at 92 [81 S.Ct. at 425, 5 L.Ed.2d 428] demands that this Interview Report, reasonably found to be an accurate copy of a written statement made the day after the robbery by Staula and adopted by him as his own, be producible for impeachment purposes."

Of course the court added that it intimated no view on the probative weight to be accorded the interview report as impeaching Staula's trial testimony; and that is a matter for the triers of facts.

Finally the Supreme Court remarked in a final footnote,

"Understandably, no contention has been made that the refusal to produce the Interview Report can be deemed harmless error under the principles laid down in Rosenberg v. United States, 360 U.S. 367 [79 S.Ct. 1231, 3 L.Ed.2d 1304]. Cf. Gordon v. United States, 344 U.S. 414 [73 S.Ct. 369, 97 L.Ed. 447]."

■ In the case at bar, the district judge received a suggestion from defense counsel that he should look at reports made by Marici. The district judge, without examining any of the reports pertaining to defendant, attempted to

draw a discriminating line between those which he should examine and those which he should not examine. This line, however, appears indistinct, being defined by the court to include as a proper subject of *in camera* examination "any statement in the nature of reports on interviews, conferences, and what have you", but excluding an agent's report for the purpose of recommending action by the agency (evidently regardless of statements by witnesses which it may contain, or upon which it may rely).

Specifically the court's ruling denying a request for an *in camera* examination was disposed of by only a denial "with respect to additional reports".

With a man's liberty at stake in a judicial hearing, we fear the creation of a twilight zone in which the court would perform its duty under the Jencks act under such elusive restrictions.

■ Moreover, we feel that, once the question has been raised by defense counsel, the court should dispose of it on its own responsibility based upon what it ascertains in a hearing. The court should not make a final disposition upon the representations of government counsel. It cannot escape its duty to learn the truth firsthand. We think the United States Supreme Court recognized this in Killian v. United States, 368 U.S. 231, at 243, 82 S.Ct. 302, at 309, 7 L.Ed.2d 256, where the court said:

> "* * * Inasmuch as the receipts are not contained in the record before us, whether the Solicitor General's representations are true can be determined only upon a hearing in the District Court."

and, 368 U.S. at 244, 82 S.Ct. at 309:

> "If it is true, as the Solicitor General represents, that the information contained on the two Ondrejka receipts had already been given to petitioner in Ondrejka's narrative statements covering the same subjects, it is clear that the District Court properly could find that the error in failing to produce those two receipts was harmless."

■ For these reasons, we vacate the judgment and remand this cause to the district court with directions (1) to hold an inquiry, pursuant to the Jencks act and consistent with this opinion, and (2) supplement the record with new findings.[1] Campbell v. United States (1961), supra, 365 U.S. 98–99, 81 S.Ct. 428–429; Killian v. United States, supra, 368 U.S. 244, 82 S.Ct. 309. If the district court then concludes that the government should have been required to deliver any additional statement or report to defendant's counsel for examination, that court will vacate the judgment of conviction and accord defendant a new trial. Campbell v. United States (1961), supra, 365 U.S. 99, 81 S.Ct. 428.

■ On the other hand, if, upon remand, and the making of such new findings, the district court concludes that the government is not required to deliver any additional statement or report to defendant's counsel for examination, the court shall enter a new final judgment based upon the record as supplemented by its findings, thereby preserving to defendant the right to appeal to this court. Killian v. United States, supra, 368 U.S. 244, 82 S.Ct. 309.

Accordingly the judgment of the district court is vacated and this cause is remanded to that court for the hearing and other proceedings referred to in the two preceding paragraphs hereof.

Judgment vacated and cause remanded with directions.

---

1. On oral argument, government counsel acquiesced in the action we now take.