USA v. Flynn                            CR-92-18-2-SD 02/22/96
                UNITED STATES DISTRICT COURT FOR THE

                    DISTRICT OF NEW HAMPSHIRE


United States of America

        v.                              Criminal No. 92-18-2-SD

Charles J. Flynn


                          O R D E R


    As directed by the Court of Appeals, an evidentiary hearing
in this matter was held in November and December of 1995.  Some
24 witnesses testified over a period of six days, and some 45
exhibits were introduced in the course of such hearing.

    Subsequently, the court reviewed the 24 volumes of documents
which comprise the file of the Federal Bureau of Investigation
(FBI).  Exhibit 46.  The court also reviewed the five volumes of
documents compiled by the New Hampshire State Police (NHSP).
Exhibit 47.

    At trial in the fall of 1992, the court reviewed, in camera,
a number of documents which were marked in a group as Trial
Exhibit 275.  On the remands from the Court of Appeals, all of
these documents were not returned to this court.  Accordingly,
Exhibit 576 was created to contain those copies of documents from
Trial Exhibit 275 which were not here returned.  Exhibit 541

contains the documents introduced in the course of the evidentiary hearing held in December of 1994.

At the 1995 hearing, testimony was first elicited from the law enforcement officers who had interviewed the trial witnesses.[1]  In each instance, the interviewing officer identified the witness interviewed and the dates and number of pages of each such interview.  Each such interview report was then marked as an exhibit.

The interviewing officers were followed to the stand by a number of trial witnesses who had been the subject of such interviews.  In turn appeared cooperating witnesses who had originally been named as co-defendants in the indictment.  A number of the earlier-testifying witnesses were then recalled.

Laura MacPherson was employed at the First NH Bank in Stratham, New Hampshire, at the time the bank was victimized by armed robbery on September 9, 1991.  She was interviewed by FBI Agent Ryan, Exhibits 8, 541-3; 8A, 541-2; 576-5; by Officer Forbes, Exhibit 11, 576-6; and by Officer Symmonds, Exhibit 40,

_____

[1]In order of appearance, these witnesses included Agents Shaun Rafferty, Ralph Gault, and Thomas G. Ryan, Jr., of the FBI; Officers Colon Forbes and Francis Breen of NHSP; Officer Thomas Lyons of the Hampton, New Hampshire, Police Department; and Officer Michael Symmonds of NHSP.

2

576-7.  She also gave a statement to a bank employee.  Exhibit 42, 541-3.[2]

With the exception of the statement given to a co-employee, Ms. MacPherson had not seen the reports of interviews or any notes thereof prior to her testimony at trial.  Trial Transcript (Tr.), Oct. 8, 1992, at 120; Tr. Nov. 21, 1995, at 19-21.

None of these notes, or typed documents made therefrom, vary significantly from the testimony of the witness at trial, Trial Tr. Oct. 8, 1992, at 39-76, 77-160, and they cannot be classified as verbatim reports of the witness within the meaning of the Jencks Act.

Anita Ramsdell, another bank employee at the time of the robbery, was interviewed by Agent Rafferty, Exhibits 3, 3A, 576-9, 541-6, and by Officer Symmonds, Exhibit 40, 576-11.  She also gave a statement to another employee of the bank.  Exhibit 43, 541-4.

Ms. Ramsdell had not seen any reports of law enforcement interviews prior to her trial testimony.  Trial Tr. Oct. 9, 1992, at 35-37, 40-41, 50; Tr. Nov. 21, 1995, at 34, 37.  None of the law enforcement interview reports can be fairly read to fall

_____

[2]As set forth in the court's order of January 4, 1995, those reports made to a co-employee were not available at trial. Document 548, at 7 & n.6.  Their absence, as the court indicated in said order, however, equates with harmless error for the reasons set forth in said order.

3

within the requirement of "verbatim" records of what the witness imparted to the interviewer. Moreover, they do not depart in any marked way from the testimony of the witness at trial. Trial Tr. Oct. 8, 1992, at 162-205, 207-14; Trial Tr. Oct. 9, 1992, at 7-60.

Kelly McCoy, who was manager of the Stratham bank, was interviewed by FBI Agent Gault, Exhibits 7, 7A, 541-1; Officer Forbes, Exhibits 12, 576-14; and Officer Symmonds, Exhibits 40, 576-11. Her statement to the employee of the bank is found in Exhibits 44 and 541-5.

Ms. McCoy similarly never saw the reports of the interviews of law enforcement prior to testifying at trial. Trial Tr. Oct. 9, 1992, at 101-02, 176; Tr. Nov. 21, 1995, at 45. Again, these reports are not verbatim accounts of what the witness told the interviewing officers, and they do not significantly depart from her testimony at trial. Trial Tr. Oct. 9, 1992, at 61-95, 98-181.

Walter Douglas Scamman, Jr., was interviewed by Officers Forbes, Exhibits 20, 21, and Symmonds, Exhibit 41. He occupied the farm property directly across from the Stratham bank. Exhibit 41 had been given to defendant's counsel for use at trial. Trial Tr. Oct. 19, 1992, at 172.

4

The witness was never shown nor had read to him the reports of law enforcement interviews prior to testifying at trial. Tr. Nov. 21, 1995, at 57. These reports do not contain any quotations of language from the witness, and are clearly not verbatim accounts of his testimony.

Linda Sherouse, assistant manager of the Dress Barn Woman at the time she was robbed on June 7, 1991, was interviewed by Officers Forbes, Exhibits 25, 576-21, and Lyons, Exhibits 35, 576-20. She also gave a statement to her employer, which, pursuant to an order of the court, Trial Tr. Oct. 27, 1992, at 115, was produced and turned over to defendant's counsel for use in the course of her cross-examination. Trial Tr. Oct. 28, 1992, at 5-7, 14, 36-38.

Ms. Sherouse never saw or had read to her the reports of the law enforcement interviews prior to her trial testimony. Tr. Nov. 21, 1995, at 64, 68. Such reports are in summary form and are clearly not verbatim accounts given by the witness to the interviewing parties.

Joanne Kosakowski was store manager of Dress Barn Woman at the time Ms. Sherouse was robbed. She was interviewed, together with Ms. Sherouse, by Officer Lyons, Exhibits 35, 576-20, and also by Officer Forbes, Exhibit 26. Her statement to her employer was also given to defendant's counsel for use in cross-

5

examination at the time of trial. Trial Tr. Oct. 27, 1992, at 115; Trial Tr. Oct. 28, 1992, at 5-7, 14, 36-38.

Ms. Kosakowski had never seen nor reviewed the reports of the law enforcement interviews prior to testifying at trial. Tr. Nov. 21, 1995, at 76, 79. The reports are in summary form, and again do not qualify as verbatim reports of the witness.

Tanya Ferguson, niece of cooperating witness Richard Ferguson, met defendants Flynn and Kenney in September 1991 at her mother's residence in Upland, California. In early October 1991 she drove with Flynn from California to Massachusetts in a motor vehicle which was registered to defendant Gary Neal.

Ms. Ferguson was interviewed by Officer Forbes, Exhibits 9, 275-31; 10, 275-30, and by Officer Symmonds, Exhibits 39, 275-29. The Symmonds interview was in the form of a statement verified by the witness as accurate and, together with the grand jury testimony of Ms. Ferguson, was turned over to and used by defendant's counsel at trial. Trial Tr. Oct. 8, 1992, at 10; Trial Tr. Oct. 23, 1992, at 77-79, 80-83, 88, 91-92, 96-97, 104-05, 106, 110-13. The other statements were never shown to the witness prior to trial. Tr. Nov. 21, 1995, at 85, 86.

The statement possessed and used by the defendants in the course of trial, Exhibit 39, 275-29, includes all of the information set forth by the witness in Exhibits 8 and 9. In

6

addition, Exhibits 8 and 9 are not verbatim reports of statements made by Ms. Ferguson.

Rosemary Tabbi, the aunt of Tanya Ferguson, was interviewed by Officers Forbes, Exhibits 9, 275-31; 10, 275-30; 22, 576-18, and Breen, Exhibit 32, 576-17. She never saw these reports before she testified at trial. Tr. Nov. 21, 1995, at 97.

The grand jury testimony of Ms. Tabbi was given to defendant's counsel for use at trial. Trial Tr. Oct. 23, 1992, at 138-39; Tr. Nov. 21, 1995, at 109. The law enforcement interviews of her do not purport to be and are not verbatim reports of her discussions with the interviewing officers.

Janet Bokuniewicz, a friend of defendant Gary Neal, was interviewed by Officers Breen, Exhibit 33, 275-37, and Symmonds, Exhibit 36, 275-38; Exhibit 37, 576-19. Her grand jury testimony was also given to defendant's counsel for use in the course of trial. Trial Tr., Day 15 Morning Session, at 34.

Ms. Bokuniewicz never saw the law enforcement interview reports before trial. Tr. Nov. 21, 1995, at 112. With the exception of one interview concerning events that were not related to the trial testimony of the witness, Exhibit 36, 275-38, the reports are in summary form and are not verbatim reports of her statements to the law enforcement officers.

7

Stephen Cyr bought certain items from the Raineri brothers, Brian and Bruce. He was interviewed by Officer Forbes. Exhibit 31, 275-10.

Mr. Cyr never saw any of his interview reports prior to trial. Tr. Nov. 21, 1995, at 117. The interview report is not a verbatim report of the statements made by the witness to the interviewer, and it does not vary from the testimony of the witness given at trial.

Sharon Foley was, in the summer of 1991, a friend of and visitor to defendant Flynn. Her testimony at trial was decidedly unhelpful to the prosecution. Trial Tr. Oct. 29, 1992, at 33-60.[3]

Ms. Foley was interviewed by Officer Forbes. Exhibit 27, 275-9. Hardly contemporaneous, the interview report contains a few quotations from the witness, but cannot be characterized as a verbatim report. In addition, the witness disclaimed any memory of such interview, Tr. Nov. 29, 1995, at 120, and she also challenged certain portions thereof. Id. at 124-26.

Thomas McQueeney, whose two grand jury transcripts were used effectively by the defense at trial, Trial Tr. Oct. 29, 1992, at 138-79; Trial Tr. Nov. 2, 1992, at 5-124; Trial Tr. Nov. 3, 1992,

---

[3]Indeed, the prosecution requested and was denied the opportunity to cross-examine the witness as hostile. Trial Tr. Oct. 29, 1992, at 46-50.

8

at 5-87, 97-112, was interviewed by Officers Forbes, Exhibits 13, 14, 15, 275-33, 275-32, 576-4, and Breen, Exhibit 34, 275-35.

One of such interviews covers people and events totally unrelated to the incidents which were the subject of this indictment. The remaining documents are not verbatim accounts of the witness, and the relevant events therein contained were fully related by Mr. McQueeney in both his trial testimony and his testimony before the grand jury.

Richard Ferguson, a cooperating witness, was interviewed by Agent Rafferty. Exhibits 1, 541-8; 2, 541-7; 2A, 275-8, 541-9. The witness never saw the reports of those interviews. Trial Tr. Oct. 14, 1992, at 14; Tr. Nov. 27, 1995, at 20, 21.

At trial, Exhibit 2A, 275-8, 541-9, redacted to remove incidents and identities unrelated to the events of the indictment, was made available for defense counsel to use in cross-examination of Mr. Ferguson. The remaining interview reports are not verbatim accounts of the testimony presented by the witness, and the events therein related were set forth in the details of the redacted version of Exhibit 2A, 275-8, 541-9, which was given to defendant's counsel.

Arthur Cosgro, another cooperating witness, was interviewed by Officer Symmonds. Exhibit 38, 275-14. His grand jury testimony was given to counsel prior to trial.

9

Cosgro's interview report was never shown the witness prior to trial. Tr. Nov. 28, 1995, at 15. It cannot be described as a verbatim account of the statement he gave the interviewing officer.

Carole Kennedy, an employee of Bickford's Restaurant at a time relevant to investigation of the Stratham bank robbery, was interviewed by Agent Rafferty. Exhibit 5. This brief report, which resulted from a telephone conversation between the agent and the witness, does not purport to be and cannot be classified as a verbatim account of the statements of the witness.

Also interviewed briefly by Agent Rafferty, Exhibit 4, Peter Menounos was the general manager of a Howard Johnson's Restaurant at times relevant to the Stratham bank robbery. Tr. Nov. 28, 1995, at 27, 28. His report, again, does not purport to be and cannot be classified as a verbatim account of statements from the witness to the interviewing officer.

Patrick Walsh was the lead prosecutor at the time of trial. He took no notes of any interviews with witness Arthur Cosgro, Tr. Nov. 28, 1995, at 35, 37, 42-44, 48. No tape recording of any interview with Cosgro was made. Tr. Nov. 28, 1995, at 36-37, 42.

Contrary to his testimony under oath at trial, Brian Raineri testified in the 1995 hearing to a considerable number of

10

meetings with law enforcement officers at which notes were taken. Compare Trial Tr. Nov. 4, 1992, at 17-18 with Tr. Nov. 30, 1995, at 10-14, 15-19, 20-37, 38-45, 45-55, 55-58, 61-72, 72-80, 81-87, 87-97, 97-100.

Mr. Raineri was interviewed on three separate occasions by Officer Forbes. Exhibits 16, 17, 18. At the 1995 hearing he challenged the accuracy of the documents which reported these interviews. Tr. Nov. 30, 1995, at 65-71, 88-95, 97-99. Accordingly, the court held an in camera hearing, at which Mr. Raineri and his counsel were present, for the purpose of determining the exact nature of the alleged inaccuracy. See Sealed Tr. of Nov. 30, 1995.

Not only are the reports of actual interviews at issue, Exhibits 16, 17, 18, not verbatim reports of the witness, but they appear to contain material from other witnesses which was not elucidated from Brian Raineri. Id.; see Tr. Nov. 30, 1995, at 153-55, 157-58, 173, 177.

With the exception of the notes of FBI Agents Rafferty, Exhibits 1, 2, 3, 6; Gault, Exhibit 7; and Ryan, Exhibit 8, all interview reports made by law enforcement officers were in typed form "clearly made after the interview and not during it." United States v. George H. Bennett and Lionel Lucier, ___ F.3d ___, ___, Nos. 94-2260, 2300, slip op. at 12 (1st Cir. Feb. 1,

11

1996). Moreover, the fact that they might contain a "few isolated direct quotations" would not qualify them as such verbatim reports. Id.

At trial, defendant's counsel effectively pointed out and drove home to the jury the contrast between the testimony of the witness Brian Raineri and the witness Thomas McQueeney concerning certain incidents which involved the alleged use of weapons. Review of the massive documentation set forth in the FBI file, the NHSP files, and the reports of all witnesses made to law enforcement interviewers satisfies the court that application of the tests adopted by the Court of Appeals in United States v. Neal, 36 F.3d 1190, 1197-99 (1st Cir. 1994), and in United States v. Bennett; Lucier, supra, makes clear that the documents here at issue were not producible under either the Jencks Act or the rules of Brady v. Maryland, 373 U.S. 83 (1963), and its progeny. See United States v. Watson, ___ F.3d ___, ___, No. 95-1384, slip op. at 7 (1st Cir. Feb. 2, 1996). In short, there are no "smoking guns", the production of which would have altered the final result of this criminal litigation in any fashion; the

12

defendant was not entitled to production of any such documents; and the defendant is not entitled to a new trial herein.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

February 22, 1996

cc:  United States Attorney
     United States Marshal
     United States Probation
     Barry Wilson, Esq.